## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER J. REICHERT,** | : | |
| **Plaintiff**, | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **ELIZABETHTOWN COLLEGE,** | : | |
| et al., | : | **No. 10-2248** |
| **Defendants.** | : | |

### MEMORANDUM

Schiller, J.                                                                    August 4, 2011

   Plaintiff Christopher Reichert alleges that Defendant Elizabethtown College ("the College") and several of its faculty members violated his civil rights as a disabled person, breached a contract with him, and violated federal and state laws by accessing his e-mails without permission. Currently before the Court is Defendants' motion to dismiss Counts IV-XI of Reichert's Second Amended Complaint. For the reasons stated below, the motion is granted in part and denied in part.

## I.  BACKGROUND

   Reichert suffers from Attention Deficit Hyperactivity Disorder, a seizure disorder, and other "learning disabilities in written expression and reading fluency." (Second Am. Compl. ¶ 31.) Reichert informed the College of his disabilities when he applied by including an essay on his disabilities with his application and informing the College's Center for Student Success, which "oversees implementation of disabilities protection." (*Id.* ¶ 32.) Reichert enrolled in the College in the fall of 2007 with a dual major in elementary education and special education. (*Id.* ¶ 4.) During Reichert's sophomore and junior years, his experience at the College soured. He was denied priority scheduling to meet his unique needs, and was required to take a number of difficult courses. (*Id.* ¶

17.)  Reichert had a heated exchange with one of one of his professors over an attempt to drop one of those classes.  (*Id.*)  The professor reported this conversation to the chairman of the education department, defendant Dr. Carroll Tyminski, who "took it upon herself to order a safety patrol to 'protect' that professor for the following week."  (*Id.*)  Dr. Tyminski also called an emergency meeting of the education department to discuss other complaints made against Reichert, and ultimately determined that he represented a threat to the College and should be expelled.  (*Id.*) However, after Reichert and his parents protested, defendant Dr. Susan Traverso, the College's provost, overruled Dr. Tyminski's decision. (*Id.*)

Despite Dr. Traverso's decision, she and other faculty members devised a multi-part plan to force Reichert from the College.  (*Id.*)  This included deliberately not providing Reichert further accommodations, spreading rumors about him, and advising faculty members "to make a record of all of [Reichert's] inappropriate behaviors."  (*Id.*)  Dr. Tyminski also hired a computer investigation service to monitor Reichert's e-mail account.  (*Id.*)  In addition, Dr. Tyminski and other faculty members held a meeting on November 11, 2008 to discuss removing Reichert.  (*Id.* ¶ 60.) Defendants Dean Marie Calenda, Mimi Staulters, Rachel Finley-Bowman, Dr. Traverso, and Susan Pitcher were at the meeting. (*Id.*)

On November 23, 2009,  Dean Calenda sent Reichert an e-mail indicating she was concerned about his well-being, and that "unnamed campus community members had observed noticeable extremes in his behavior." (*Id.* ¶ 22.)  After meeting with Reichert the following day, Dean Calenda scheduled a disciplinary hearing for December 4, 2009.  (*Id.* ¶ 25.)  Unfortunately, Reichert suffered a seizure on December 4 and was unable to attend.  (*Id.* ¶ 27.)  Within a week of the seizure, the College informed Reichert that he would have to reschedule his disciplinary hearing and attend two

2

other hearings before being allowed to return.  Reichert was told he would have to face an academic integrity hearing after being accused of plagiarism, and another hearing regarding his professional competency to become a teacher.  (*Id.* ¶ 28.)  After Reichert suffered a mental breakdown, the College allowed him to take a medical leave of absence, but insisted that he face the three hearings before returning.  (*Id.* ¶¶ 29-30.)


## II.        STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

This Court applies a two-part analysis to determine whether claims survive a Rule 12(b)(6) motion to dismiss.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  First, the Court must separate the factual and legal elements of the claim, accepting well-pleaded facts as true, but disregarding legal conclusions.  *Id*.  Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief.  *Id*. at 211 (citing *Phillips*, 515 F.3d at 234-35).  If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failure to state a claim.  *Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

3

Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.   DISCUSSION

### A.   Section 1983 and Direct Constitutional Claims

In Count IV, Reichert brings a claim under 42 U.S.C. § 1983 against the College, a private institution, alleging violations of his rights to privacy and due process under the Fourth, Fifth, and Fourteenth Amendments.  Section 1983 provides that a plaintiff may bring a lawsuit against a state actor for a violation of a right, privilege or immunity secured by the Constitution or laws of the United States.  *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (noting that the Third Circuit treats § 1983's "under color of state law" requirement identically to the Fourteenth Amendment's "state action" requirement.)  Reichert alleges that the College's activities constituted state action because "as a result of state and federal funding received and being specifically delegated the power to determine who can become a State Certified teacher within the Commonwealth of Pennsylvania, there exists a symbiotic relationship between it and the state."  (Second Am. Compl. ¶ 49.)

"State action" for § 1983 purposes requires that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 646 (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). The Third Circuit has outlined three tests to determine whether state action exists:

(1) Whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far

4

insinuated itself into a position of interdependence with the acting party that it must
be recognized as a joint participant in the challenged activity.

*Id.* (internal quotation marks and citation omitted).

The first test imposes "a rigorous standard that is rarely satisfied," and this case provides no exception.  *See Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001).  Reichert makes no allegations that the College was exercising a traditionally state function, and "courts . . . have widely rejected suggestions . . . that a private university imbues itself with the color of state authority merely by providing higher education."  *See Becker v. Univ. of Seattle*, 723 F. Supp. 2d 807, 811 (E.D. Pa. 2010) (collecting cases).

Next, none of Reichert's allegations indicate that the College "acted with the help of or in concert with state officials," or that "the state has so far insinuated itself into a position of interdependence" with the College.  Under the second and third tests, a court  examines:  (1) "whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation," and (2) whether the state has "exercised coercive power" such "that the choice must in law be deemed to be that of the State."  *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Kach*, 589 F.3d at 649.  With regard to the first prong, Reichert does not allege that the state exercised any control over or acquiesed in the College's mistreatment of him, but rather that Pennsylvania has given the College the power to certify teachers and provides state funding to the College.  These claims do not allege state action.  *See Francis v. Lehigh Univ.*, Civ. A. No. 10-4300, 2011 WL 204749, at *6 (E.D. Pa. Jan. 24, 2011).

With regard to the second prong, courts have held that a private university could be considered a state actor because the state had extensive statutory and regulatory authority over that

5

institution.  *See Krynicky v. Univ. of Pittsburgh,* 742 F.2d 94, 103 (3d Cir.1984); *Braden v. Univ. of Pittsburgh,* 552 F.2d 948, 961-62 (3d Cir.1977) (holding that the University of Pittsburgh could be a state actor because of a coercive legislative scheme "carefully interweaving the functions of the University . . . and the Commonwealth," including providing capital development assistance in exchange for rigorous reporting requirements and the state's selection of one-third of the university's board of trustees).  No such relationship is alleged here.  Contrary to Reichert's allegation that the state has delegated powers of teacher certification to the College, Pa. Code § 49.13(c) provides that applicants for teaching certificates "shall be recommended" to the Department of Education by a "preparing institution"; the College does not have ultimate authority to certify teachers.  Reichert's allegations do not suggest a level of control sufficient for imputation of its actions to the state.  Despite Reichert's attempts to transform the College into a state actor, his § 1983 claim will be dismissed.

Count IX is an additional invasion of privacy claim brought directly under the Fourth and Fourteenth Amendments. Because it is duplicative of Count IV, and because Reichert's proper vehicle for bringing such claims is § 1983, this claim will be dismissed.  *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 686-87 (3d Cir.1980).

**B.     Section 1985 Claim**

In Count V, Reichert alleges that the individual defendants conspired to violate his civil rights under  42 U.S.C. § 1985.  Section 1985(3) prohibits conspiracies to deprive a "person or any class of persons equal protection of the laws, or of equal privileges and immunities under the law." To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class

of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

Reichert alleges that the individual defendants held at least one meeting for the purpose of unlawfully removing him from the College. Taken together with Reichert's numerous other allegations of disability-based discrimination, including his subsequent removal from the College, Reichert has sufficiently alleged his § 1985 claim. Defendants' motion will therefore be denied as to Count V.

**C.    Computer-Related Claims**

*1.    ECPA Claim*

Reichert alleges that the College violated the Electronic Communications Privacy Act ("ECPA") by accessing his e-mails without permission. The ECPA provides a right of action against "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1). For purposes of the ECPA, an "interception" of an e-mail must "occur contemporaneously with the transmission." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003). Because Reichert has not alleged facts suggesting that the College accessed his e-mail at the time of transmission, his ECPA claim will be dismissed.

*2.    PWESA Claim*

Reichert makes a similar claim against the College under the Pennsylvania Wire Tapping and Electronic Surveillance Act ("PWESA"), which permits lawsuits by persons whose wire, electronic or oral communications are unlawfully intercepted. 18 Pa. Cons. Stat. § 5701, et seq. Pennsylvania

7

courts have defined "intercept" in accordance with federal courts' interpretation of the ECPA to require contemporaneousness. *See, e.g. Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001). Because Reichert has not alleged contemporaneous interception, his PWESA claim will also be dismissed.

### 3.    CFAA Claim

Reichert next makes a Computer Fraud and Abuse Act ("CFAA") claim against the College. The CFAA provides a cause of action against "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a). A civil action may be brought under the CFAA "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Those subclauses state as follows:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or
> (VI) damage affecting 10 or more protected computers during any 1-year period.

Reichert does not allege conduct that would satisfy any of the required subclauses. Accordingly, his CFAA claim will be dismissed.

### 4.    SCA claim

Reichert also includes a Stored Communications Act ("SCA") claim against the College.

The SCA provides a cause of action against one who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided, or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system." 18 U.S.C. § 2701(a).  18 U.S.C. § 2701(c) provides that subsection (a) "does not apply . . . to conduct authorized by the person or entity providing a wire or electronic communications service." The alleged searches were of Reichert's College-provided account.  Accordingly, the SCA claim will be dismissed.  *See Fraser,* 352 F.3d at 114 (noting that § 2701(c) should be read "literally to except from [the SCA's] protection all searches by communications service providers" in holding that the defendant was not liable for accessing company-provided e-mail).

### D.     State-Law Invasion of Privacy Claim

Finally, Reichert lodges a common law invasion of privacy claim against the College for accessing his e-mail.  To state a claim for unreasonable intrusion upon the seclusion of another,  a plaintiff must allege a highly offensive and intentional intrusion upon private concerns, and that the intrusion caused mental suffering, shame, or humiliation. *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998).  Reichert alleges no facts to demonstrate that he experienced metal suffering.  Indeed, Reichert "has no idea what private or confidential matters became the subject of scrutiny" by the College.  (Second Am. Compl. ¶ 17.)  Accordingly, his invasion of privacy claim will be dismissed.


### IV.     CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion except with

respect to Reichert's § 1985 claim.  An Order consistent with this Memorandum will be docketed

separately.